```
JAMES F. BEIDEN   #111304
Attorney at Law
840 Hinckley Road, Suite 245
Burlingame, CA  94010
tel:(650)697-6100
fax:(650)697-1101

Attorneys for Debtor
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                              )  CHAPTER 7
                                   )
PATRICK D. NG                      )  Case No. 08-31512
JOCELYN C. NG                      )  Date: 12/5/08
                   Debtor(s).      )  Time: 9:30 a.m.
_____)  Ctrm: 23
```

MEMORANDUM IN OPPOSITION TO DISMISSAL

Debtors, by and through their attorney of record, hereby oppose the motion of the U. S. Trustee to dismiss their case.

INTRODUCTION

Debtors, in their early 40's with a 10 year old daughter, purchased a home in Vallejo and commuted to their respective jobs at the San Francisco Airport. When the housing bubble burst, they concluded that the sacrifice of being so far from their home and daughter during the work day when the home they had purchased had become an investment that would not pay dividends for many years to come was not justified. Their commute to work from Vallejo, always an arduous journey, combined with the lost value in their home, caused the debtors to elect not to try to save the home. Indeed, by the time the debtors filed bankruptcy, the property was worth little more than half of what they owed on the

property. They moved to San Mateo to be nearer their employment, giving up on their home ownership dream, at least for the near future. Two months later, when they decided to stop paying their mortgages, debtors decided to trade in one of their existing vehicles which they considered unsafe in an accident and purchased an older model Lexus as a safer vehicle for their family. The purchase price was $26,008. They were worried that their deteriorating credit would make it impossible to replace the unsafe vehicle if they waited any longer. Seven months later the debtors filed for bankruptcy protection to avoid liability for the second mortgage on their Vallejo home and their accumulated credit card debt, much of which was used to retain and improve the Vallejo home.

After the petition filing, Ms. Ng elected to attempt taking her daughter to work in place of having their daughter cared for by others. This arrangement is with the consent of her supervisor and is subject to termination by the supervisor at any time. Debtors do not believe that their 10 year old daughter should be left unsupervised or cared for.

Debtors are about half way through their working careers to retirement and have between them what on the petition date was $32,400 set aside in 401(k)s. Since the petition date, that value has dropped by 23%. With the lost opportunity to accrue equity in California real estate, debtors believe that their 401(k)s are their only realistic source of support beyond Social Security when they retire.

Debtors are under the median family income as adjusted by the permitted deductions on the means test even without their

mortgage deduction.  The United States Trustee's Office (UST) brings this motion still swimming upstream on the issue of deductability of mortgage payments on property intended for surrender ignoring the fact that the majority of courts that have faced the issue have ruled in favor of deductability-including the only two judges of this court who have issued opinions on the issue.  Additionally, UST takes the novel approach of ignoring the debtors' actual tax deductions from their pay and had one of its analysts "analyze" debtors' taxes to conclude that the debtors <u>actual</u> tax deductions should be reduced by $202 per month and arguing that the debtors child care expense should be deducted from the means test despite the actual expense on the filing date and the prospect that the debtors would have to resume the expense in the event that debtor's supervisor changes his/her mind or a new supervisor has a different policy.

    This is a mean-spirited motion (no pun intended) by an agency with vast resources and independent funding which puts debtors to the additional expense, likely to cost multiples of their initial cost for the bankruptcy, that appears designed to intimidate these debtors (and those that follow) into converting their case to Chapter 13 by continuing to pursue a legal theory that UST has lost more than it has won and by tortured logic. This objection borders on frivolousness, particularly since a favorable ruling on the contractual mortgage payment issue would not change the result unless they also prevail on the tax and child care issue.

I.    EVIDENTIARY OBJECTIONS

    Debtors hereby object to the exhibits to the declaration of

Wayne Yee as follows:

    a.   Exhibit 1 is unintelligible and irrelevant.

    b.   Exhibit 2 is unintelligible.

    c.   Exhibits 3, 4 and 5 lack a declaration as to the origin and chain of custody of these documents, when Mr. Yee was not part of the 2004 exam and has no personal knowledge of the source of these documents.

Without waiving these objections, debtors respond to the assertions of the moving papers as follows:

## II. THE CASE IS NOT PRESUMPTIVELY ABUSIVE UNDER THE MEANS TEST

Debtors' means test correctly reflects that the case is not presumptively abusive.

<u>A. Debtors' deduction for their mortgages on their Vallejo property are proper despite their decision to surrender it.</u>

Section 707(b)(2)(A)(i) allows debtors to reduce their income "by the amounts determined under clauses (ii), (iii) and (iv) . . . ." Clause (iii) provides that:

> "The debtor's average monthly payments on account of secured debts shall be calculated by the sum of-
>    (I) the total amounts scheduled as <u>contractually due</u> to secured creditors in each of the months following the date of the petition . . . ."

The code makes clear that the phrase "contractually due" is not limited by the debtor's intentions. If debtors could change their contractual obligations with their intentions, debtors wouldn't need bankruptcy.

In October 2007, Judge Weissbrodt concluded in <u>In re Chang</u> (N.D.Cal 2007; WL 3034679; 07-50484 ASW), after reviewing numerous cases deciding the issue, that the majority of courts

that had faced this issue had agreed that the contractual obligation to pay was sufficient to allow deduction of the mortgage payments on the means test even if the debtor's declared intent was to surrender the collateral. He agreed with the majority and allowed the deduction. Four months later, Judge Jaroslovsky in <u>In re Rodrigues</u> (N.D.Cal 2008; 07-11312) agreed to follow the lead of Judge Weissbrodt and the majority of the courts, noting in footnote 1 that the means test is a "mechanical" test.

Indeed, the means test is an arbitrary formula that has some reference to reality, but is not-in the end-a full, or necessarily accurate, picture of the debtors financial circumstances. No amount of effort will give it any more credibility as a true picture of debtors' circumstances. The IRS standards used in the means test are merely numbers that might represent that agency's estimate of average expenses, but in most cases will not be debtors' actual expenses. A debtor's expenses are often locked in at numbers that are not the IRS standards that they are not in a position to modify, such as a residential lease that exceeds the IRS standards for housing. It is of little comfort to a debtor that the IRS standards for housing are less than their lease obligation, if they are in fact paying more. (If they were to terminate the lease in their bankruptcy, they would likely have difficulty qualifying with a new landlord by relocating with a bankruptcy on their record.) Additionally, even a debtor's stated intentions may change from what he/she contemplates at the time of filing or the debtor may be offered terms by a lender that changes their intentions to surrender.

Intentions are just that and they often change in real life and in bankruptcy. It is amply clear that the means test is a mere formula that hypothetically estimates what debtors should incur, not what they actually incur.

While UST argues that the means test is forward looking, the test arbitrarily uses the average income for the six full months preceding the filing month to calculate debtors earnings without regard to whether these are accurate looking forward. Had one or both debtors lost their jobs in the month of the filing, their income for means test purposes wouldn't change. Indeed, inasmuch as UST also uses the "totality of the circumstances" analysis of section 707(b)(3) it seeks two bites of the apple each with a different formula and analysis and each seeking to "looking forward" but using two very different calculations. To allow "looking forward" in two different tests with two different standards is a mine field for the debtors and the courts. The means test looks back for some things and is a snapshot of their circumstances on the petition date based on averages, but should not overlap the "totality of the circumstances" test which looks forward.

B. <u>Even if debtors were not eligible for the contractual secured debt payment deductions, their case is still not presumptively abusive so long as they are entitled to their actual tax withholding and their child care expense as it existed on the petition date.</u>

Debtors do not need the contractual secured debt payment deductions to remain presumptively not abusive. These expenses, while allowed as noted above, are unnecessary to debtors' the

finding that debtor's petition is not abusive.  A calculation which includes debtors' actual taxes incurred as shown on their check stubs and the debtors' child care expenses which were being incurred on the petition date (and are still necessary but for the good nature of Ms. Ng's supervisor) puts debtors under the presumption of abuse under the means test.  UST's motion must be sustained as to all three expenses before the debtors rise to the level of presumed abuse.  Debtors have submitted herewith a means test without the contractual secured debt payments to show this result.  See Exhibit A to the declaration of Patrick D. Ng.

C. <u>Moving party erred in attempting to estimate debtors' tax liability and reducing debtors' tax deduction on the means test.</u>

Debtors accurately included the six-month average of those taxes withheld from their six months' earnings that were the basis for determining the monthly income for means test purposes.  Debtors' calculated their tax liability used in the means test from their pay stubs that were the basis for their means test income.  UST purports to calculate debtors' tax liability as set forth in Exhibit 1 of the declaration of Wayne Yee.  Mr. Yee's "analysis" is not even a formula that is capable of recreation.  His methodology is not obvious, but also seems arbitrary.  Taxes are calculated on an annual basis, so this exercise is, in any event, meaningless in a half-year calculation.

The means test instructs the debtor to:

"Enter the total average monthly payroll deductions that you <u>actually incur</u> for all federal, state and local taxes . . . such as income taxes, self-employment taxes, social security taxes and Medicare taxes."

Debtors' actually incurred $2,420 on the earnings that are reflected in the means test. The deductions are clearly reflected on the pay stubs and this is the monthly average. UST wants to use the earnings based on the pay stubs, but does not want to allow the debtors to deduct the taxes on the same earnings despite the means test instructions, instead offering their own "analysis" prepared by a professional on their payroll. Should this be deemed the method of determining taxes incurred, it would require every Chapter 7 debtor to engage an accountant to hypothetically determine what the debtor's taxes would be on the earnings-an expense that would put the cost of a Chapter 7 even more out of reach to distressed debtors. "Incurred" can only mean "paid", not what should be paid on a future tax return-if it were accurately determinable for a partial year. This is another example of the overreaching that the UST is practicing that serves to thwart eligible Chapter 7 debtors from filing.

C. Debtors are entitled to the deduction for child care despite their subsequent cessation thereof.

Debtors are both full time employees and parents. They have chosen to both work to enhance their family's standard of living and make it possible for them to purchase a home. However, since they work, they are not able to properly supervise their young daughter. UST would require debtors to continue working to pay their creditors in Chapter 13 but not provide for the care of their child. Arguably both parents of school age children working is extraordinary and should not be the basis for the means test. It should be a per se rule that joint debtors who are parents of school age children should not have both incomes

calculated for means test purposes given the compromises to their children's well-being to have both parents work. To force both parents to work to pay their creditors borders on involuntary servitude when children are at home needing parental guidance and supervision. In any event, the debtors properly incurred child care expenses that have subsequently been reduced-subject to the whim of Ms. Ng's supervisor-that were necessary and would be again if the supervisor changes his/her mind. This expense has been temporarily abated by the good nature of the supervisor. Creditors should not receive the benefit of this tenuous perk. This expense existed on the petition date and is properly deducted from the means test.

III. THIS CASE IS NOT AN ABUSE UNDER THE TOTALITY OF THE CIRCUMSTANCES TEST

Debtor will address those items cited by UST in their brief within the context of the "totality of the circumstances". Should the court identify any other circumstances that it would like addressed, the debtors would request an opportunity to address them in a subsequent brief. Otherwise, debtors would be forced to address <u>all</u> the "circumstances" of their case.

Debtors case is not abusive under the totality of the circumstances.

<u>A. The debtors 401(k) deductions are prudent measures towards the end of being able to survive above poverty in retirement.</u>

The merits of retirement contributions must be reviewed on a case-by-case basis. (<u>Hebbring v. U. S. Trustee</u>, 9th Cir. 2006, 463 F.3d 902, 905.) A 10% voluntary 401(k) deduction has been

deemed reasonable in a case involving a 56-year old divorced man whose family, if any, was presumably grown. (In re Mills (S.D.Cal. 2000) 246 B.R. 395.) Here debtors are half way to retirement and have a mere $32,400 as of the petition date set aside. That amounts to an average of $810 per year each for the past 20 years. That sum has been reduced by 23% by the biggest stock market meltdown since the Great Depression. Prudence requires that workers set aside sums from every paycheck for retirement. That is the message that government-mandated social security withholding makes. Given the volatility of the stock and real estate markets, a 10% withholding is not unreasonable to adequately provide for workers half way through their working life with only $32,400 saved so far for retirement.

    Additionally, these are pretax dollars, hence debtors would net substantially less in a paycheck. During the first half of 2008, withholding taxes were 27% of debtors' gross earnings. Applied to the $908 deducted for their 401(k) reflected in Schedule I, taxes would reduce this sum by $245, or net additional income of $663 after taxes if the 401(k) deductions were stopped.

    Debtors submit that their 401(k) is about six months of support at their current monthly expense level after the passage of half of their working life. They will need to set aside substantial additional sums to be prepared for retirement by the time they reach their 60s.

    B. <u>The tenuous nature of the post-filing child care expense abatement does not support applying said funds to pay creditors.</u>

    Debtors have been able to work a reduction in their expenses

for child care due to the support of Ms. Ng's supervisor. There is no doubt that a 10-year old child needs care and supervision. There is no guarantee that supervisor support will continue, but the obligation will. When child care costs are no longer necessary, they will be replaced by other expenses that are needed for teenagers. This is not a sum that can be counted on in the longer term so as to require debtors to pay it to creditors.

C. <u>Debtors communications expenses are warranted in the context of two working parents and a school age child.</u>

Debtors must keep in contact with each other and their daughter to assure her safety and supervision while juggling their jobs and home responsibilities. Cable and internet are important tools for school projects. These expenses assist debtors in managing a modern family with two working parents and a school age child.

D. <u>Debtors should have included their charitable contributions in the means test, but in any event, they are appropriately included in Schedule J.</u>

Debtors project the expense of $50 for various charitable causes. They are regularly asked for donations and help when they can. When they were making mortgage payments, this was more difficult. In any event, debtors projected a $56 net of expenses over income, so unless and until they can reduce other expenses, they will not be able to make these donations. UST is correct that the debtors should have also deducted $50 per month in the means test. Thisfurther confirms debtors' lack of abusive filing under the means test.

**E. Debtors' various disclosure errors are insignificant in that sufficient information was disclosed to permit someone to ask for the missing details if they wanted them.**

1. While Mr. Ng's full middle name was not listed, he does not use his full middle name and his social security number was accurately listed. His identity was accurately listed and cannot be confused with anyone else. (UST cares so much about the full identity of the debtors that their caption for the memorandum of points and authorities does not even list the debtors' names as filed, which at least included their middle initials. Apparently the rules they are so intent on enforcing to the letter (pun intended) don't apply to UST.)

2. The sale of the 1981 Toyota Starlet was not completed by the petition date. Debtor accurately listed a half interest therein, but did not disclose, through inadvertence, that he had agreed to complete transfer to the other half owner for $300. He believes the vehicle to be worth $300 total and listed a half interest therein at $150. Yes, had he remembered, he should have also listed a right under a handwritten agreement of questionable enforceability that he would receive $300 for his half interest if the other party completed the transaction which would increase the debtors' assets by $150. He thought the vehicle was worth $300 and his half was worth $150. The debtors have ample unused exemptions that would cover this insignificant matter. Additionally, debtors volunteered the information about the contract for the purchase of the other half of the vehicle and brought a copy of the contract to the 2004 exam.

3. Debtors listed sufficient information to identify their

creditors.  If the trustee or any creditor wants to know more they can ask at the 341 meeting.  UST asked at the 2004 exam since they cared, but they could have asked at the 341 meeting if they had attended.

    4.  Debtors identified the landlord.  If the trustee or any creditor wants to know more they can ask at the 341 meeting.  UST asked at the 2004 exam since they cared, but they could have asked at the 341 meeting if they had attended.

    5.  Debtors identified the payment to the sister and the amount.  If the trustee or any creditor wants to know more they can ask at the 341 meeting.  UST asked at the 2004 exam since they cared, but they could have asked at the 341 meeting if they had attended.

    6.  Debtors did not understand that a transfer included a "trade in" vehicle when purchasing another vehicle.  This is a subtle matter as well as a minor issue.

    7.  UST wrongly asserts that debtors had failed to list a trust account for their daughter in the statement of affairs. This account had been closed months before the filing, hence there was no error on this item.

    UST is objecting to minute details which in the context of the full petition set are sufficient to permit anyone who wants to know more to ask.  There are no "smoking guns" here, just pea shooters with spit dripping out.

    WHEREFORE, debtors pray that the motion be denied and that they be granted their discharge.

Dated:  November 20, 2008      /s/ James F. Beiden
                                          JAMES F. BEIDEN
                                          Attorney for Debtors

PROOF OF SERVICE BY MAIL

I declare that:

I am employed in the county of San Mateo, California. I am over eighteen years and not a party to the within cause; my address is 840 Hinckley Road, Suite 245, Burlingame, California. On November 21, 2008, I served the MEMORANDUM OF POINTS AND AUTHORITIES and DECARATIONS OF PATRICK NG and JOCELYN NG on the interested parties, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States as follows:

Office of United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on November 21, 2008 at Burlingame, California.

/s/ James F. Beiden
JAMES F. BEIDEN