DONNA S. TAMANAHA, Assistant U.S. Trustee (WI#1013199)
Minnie Loo, Trial Attorney
United States Department of Justice
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104-3484
Telephone: (415) 705-3333
Facsimile: (415) 705-3379

Attorneys for Acting United States Trustee
 SARA L. KISTLER

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>**PATRICK NG** and<br>**JOCELYN NG**,<br>                      Debtors. | No.   08-31520<br>Chapter 7<br>Date:  5 December 2008<br>Time:  9:30 a.m.<br>Place:  235 Pine Street, 23rd floor<br>         San Francisco, California |

**REPLY IN SUPPORT OF ACTING UNITED STATES TRUSTEE'S
MOTION TO DISMISS CASE FOR ABUSE UNDER 11 U.S.C. § 707(b)**

     Sara L. Kistler, the Acting United States Trustee for Region 17 ("UST"), hereby submits this reply in support of her motion to dismiss this case as an abuse of the provisions of chapter 7 of Title 11 of the United States Code ("Bankruptcy Code").

**I.    Debtors' evidentiary objections to the Declaration of Bankruptcy Analyst**

    **A.**    **Exhibit 1**

    Debtors fail to cite to the specific rules of evidence that supports their objections.

    As Mr. Yee states, his analysis of Debtor's taxes was based on Debtors' household size, income and eligible tax deductions.[1]  Mr. Yee's analysis is relevant to the appropriate tax amount for line 25 of Debtors' Form 22A.  Accordingly, the UST request the Court overrule Debtors' objections.

    **B.**    **Exhibit 2**

    Debtors fail to cite to the specific rule of evidence that supports their objection.

---

[1] To the extent the Court requires Mr. Yee to expound on his analysis of the appropriate tax amount for line 25 of Debtors' Form 22A, the UST requests this matter be set for an evidentiary hearing to allow Mr. Yee to do so.

UST'S REPLY IN SUPPORT OF MOTION TO DISMISS CASE: 08-31520       - 1 -

As Mr. Yee states, his analysis of Debtors' pay advices indicate that Debtors' life insurance amount was $73.81 and Debtors' monthly payments related to disability insurance was $19.37.[2] To the extent the Court requires Mr. Yee to expound on his analysis of the appropriate amounts for lines 27 and 34b of Debtors' Form 22A, the UST requests this matter be set for an evidentiary hearing to allow Mr. Yee to do so.

Accordingly, the UST request the Court overrule Debtors' objection.

**C.    Exhibits 3, 4 and 5**

Debtors fail to cite to the specific rules of evidence that supports their objections.

Mr. Yee's Declaration states that he made it "based on personal knowledge, information and belief formed from records of the Office of the United States Trustee kept or obtained in the ordinary course of business."

As Debtors point out, Mr. Yee was not part of the FRBP 2004 exam for which Debtors were ordered to produce, *inter alia*,:

- Copy of Debtors' federal and state tax returns for 2007.
- Copy of installment sale contract for 2004 Lexus IS 300.
- Evidence of 50% ownership of 1991 Toyota Starlet and disclosure of the other 50% owner.

*See Order for Rule 2004 examination and to produce documents* entered 6 October 2008.

The documents produced by Debtors pursuant to that order, the recording of the FRBP 2004 examination conducted on 23 October 2008 and those documents referred to in the examination are all "records of the Office of the United States Trustee kept or obtained in the ordinary course of business".

Debtors' "chain of custody" objection is curious as that concept "applies to criminal cases where the government seeks to admit evidence but cannot factually account for the care and control of that evidence at some point subsequent to its seizure by the police. Hence, a break in the chain of *custody*..." *In re Gavin*, 319 B.R. 27, 33 (1st Cir.BAP 2004) (Emphasis in original).

The Ninth Circuit Court of Appeals described the "chain of custody" rule to be applicable only in

---

[2]To the extent the Court requires Mr. Yee to expound on his analysis of the appropriate amounts for lines 27 and 34b of Debtors' Form 22A, the UST requests this matter be set for an evidentiary hearing to allow Mr. Yee to do so.

UST'S REPLY IN SUPPORT OF MOTION TO DISMISS CASE: 08-31520                                                                   - 2 -

criminal cases when considering the requirement under FRE 901(a) that evidence be authenticated or identified prior to being admitted.

> The authentication of evidence is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). If the evidence is an object connected with the commission of a crime, the proponent must also establish the chain of custody. *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir.1960).

*United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir.1991)

In any event, Debtors do not dispute that Exhibit 3 is the *Retail Installment Sale Contract* they entered into on 25 January 2008 in connection with their 2004 Lexus, that Exhibit 4 is Schedule A to their 2007 federal tax return, or that Exhibit 5 is their agreement to sell their 1981 Toyota Starlet entered 22 April 2008.

Accordingly, the UST requests the Court to overrule Debtors' objections.

## II. The application of 707(b)(2) in this case shows Debtors' case to be presumed abuse.

Debtors' annualized current monthly income exceeds the California median family income for a household of three by more than $40,000.

### A. Surrender of former residence precludes deduction of mortgage payments

1. It is undisputed that Debtors filed with their petition their *Statement of Intention* expressly stating that the "[p]roperty (their former residence) will be Surrendered".
2. It is undisputed that Debtors stopped making payments after January 2008.
3. It is undisputed that Debtors moved into rental housing November 2007.

The UST submits that the argument is fully briefed in her Memorandum of Points and Authorities filed 5 November 2008 and respectfully requests that the Court find Debtors have no "Future payments on secured claims" related to their surrendered former residence on line 42 of Debtors' Form 22A.

### B. Debtors' actual expenses for taxes support the presumption of abuse

The Committee Notes related to Form 22A's lines 25 -32 state:

> *Other Necessary Expenses*. The IRS does not set out specific dollar allowances for "Other Necessary Expenses." Rather, it specifies a number of categories for such expenses, and describes the nature of the expenses that may be deducted in each of these categories. Section 707(b)(2)(a)(ii) allows a deduction for the debtor's actual expenses in these specified categories, subject to its requirement that payment of debt not be included. Several of the IRS categories

deal with debt repayment and so are not included in the forms. Several other categories deal
with expense items that are more expansively addressed by specific statutory allowances.
Subpart A sets out the remaining categories of "Other Necessary Expenses" in individual entry
lines. Instructions in these entry lines reflect limitations imposed by the IRS and the need to
avoid inclusion of items deducted elsewhere on the forms.

2005 - 2008 COMMITTEE NOTE on Forms 22A, 22B, & 22C, at § C.1 at page 12

Debtors erroneously assert that the instructions refer to the "total average monthly payroll deductions that you actually incur for all federal, state and local taxes". *Compare Reply* at 7:ll 26 - 27 *with Official Form 22A*, Line 25. However, taxes incurred is not taxes withheld.

Line 25 of Form 22A provides:

**Other Necessary Expenses: taxes**. Enter the total average monthly expense that you actually incur for all federal, state and local taxes, other than real estate and sales taxes, such as income taxes, self employment taxes, social security taxes, and Medicare taxes. **Do not include real estate or sales taxes.**

Line 25 of Debtors' Form 22A filed 18 August 2008 does not contain the phrase "payroll deductions" as asserted by Debtors. This may explain their erroneous belief that the amount they request their employer to withhold for taxes is equivalent to the amount they "actually incur" for taxes. The proper amount on line 25 is the Debtors' actual tax expense, not their voluntary withholding amount. *See In re Lawson*, 361 B.R. 215, 222 (Bankr. D. Utah 2007), *citing In re Balcerowski*, 353 B.R. 581, 587 (Bankr. E.D. Wis. 2006).

**C.   Debtors failed to show their telecommunication expenses are deductible**

The Debtors failed their burden of showing their telecommunication expenses of $189 is fully allowable on line 32 of Form 22A.

The UST's motion to dismiss case specifically stated:

... the UST determined that Debtors did not provide information to show their deduction for telecommunication services in the amount of $189 was "for telecommunication services other than your basic home telephone and cell phone service - such as pagers, call waiting, caller id, special long distance, or internet service - to the extent necessary for your health and welfare or that of your dependents" and should also be adjusted.

*Motion* filed 5 November 2008 at page 2, ll. 15-20.

Line 32 of Form 22A provides:

**Other Necessary Expenses: telecommunication services.**  Enter the total average monthly amount that you actually pay for telecommunication services other than your basic home telephone and cell phone service - such as pagers, call waiting, caller id,

UST'S REPLY IN SUPPORT OF MOTION TO DISMISS CASE: 08-31520                                                  - 4 -

special long distance, or internet service - to the extent necessary for your health and welfare or that of your dependents. **Do not include any amount previously deducted**.

In fact, Debtors' Schedule J lists $189 for expenses related to "cell phones". Cell phone service is expressly carved out of the deductible telecommunication services expenses on line 32.

Furthermore, Debtors' general statements of their need to communicate amongst their family and the cable and internet being tools for their daughter's school projects and general household management provide little information to assist in fixing the proper amount on line 32. Accordingly, Debtors failed to show that any amounts are deductible on this line.

**III. The application of 707(b)(3) in this case shows Debtors' case to be presumed abuse.**

The Debtors moved out of their former Vallejo residence in November 2007 to San Mateo, near their employment. Debtors are in their peak earning years earning approximately $109,000 annually. In January 2008, Debtors stopped paying their mortgage, repaid Mr. Ng's sister some $2,000, and traded in their Toyota for a Lexus (which resulted in a significant increase in their monthly payments). Debtors are deferring a full 10% each of their compensation to their 401(k) plans, adding to their $32,400 nest egg. Debtors filed their bankruptcy papers without providing required basic information called for in the Official Bankruptcy Forms. Since the filing of the bankruptcy case, Debtors discontinued incurring the $160/month childcare expenses and continue to budget nearly $360/month in cable, internet and phone expenses.

    **A. Debtors' 10% contributions to their respective 401(k) plans should be reduced or suspended**

Debtors, in their early 40's, are in their peak earning years and have set aside $32,400 in their retirement account. *Opposition* at p. 10:3-5. A suspension or reduction of each Debtors' 10% contributions to their respective 401(k) plans would allow for significant payment to their creditors.[3] In a chapter 13, the postponement or reduction would last five years - when Debtors would be in their mid-40's, still in their prime earning years.

    **B. To the extent childcare expenses are not incurred, the savings should inure to**

---

[3] The UST's analysis of Debtors' 401(k) suspension already takes into account the impact on Debtors' taxes.

UST'S REPLY IN SUPPORT OF MOTION TO DISMISS CASE: 08-31520      - 5 -

**creditors.**

Debtors discontinued childcare payments shortly after filing of their bankruptcy case. Such savings should inure to their creditors. In the event Debtors subsequently resume this expense, it may be a basis for modification of a chapter 13 plan under 11 U.S.C. § 1329 should Debtors elect to convert to chapter 13.

### C. The telecommunications expenses are unreasonably high

Debtors' Schedule I shows $170 for "cable/internet/telephone" as well as $189 for "cell phone". This $359 expense appears unreasonably high, especially in light of both Debtors' employment at San Francisco International Airport and in light of Mrs. Ng's taking their daughter to work with her after school.

### D. Debtors failed to provide basic information required on the Official Bankruptcy Forms

Bankruptcy is a privilege afforded to those debtors who fully disclose their financial affairs as required in the Petition, Schedules and Statements. It is not up to the debtor to decide unilaterally what is important to complete on the forms and what is not.

In this case, Debtors take the position that if anyone is interested, they can ask at the meeting of creditors for the complete information that was required on the forms. Such a position turns the bankruptcy system on its head and defeats the purpose of the forms which were designed to elicit information for creditors, the trustee, the Court and the United States Trustee. The forms mandate the minimally acceptable level of disclosure from which a debtors' financial affairs can be discerned. Accordingly, Debtors' cavalier attitude towards their duty of disclosure should not be accepted.

Furthermore, with respect to Debtors' nondisclosure of the account purportedly held for their daughter. This account was closed in March 2008, well within the one-year disclosure period and the funds were used by Debtors towards their mortgage and other items.

### E. Debtors provided insufficient information to support their recent acquisition of Lexus

Debtors provide no information or documentation to support their assertion that their former

vehicle was "not well constructed or unsafe in an accident other than their Mr. Ng's conclusory statement. It is undisputed that Debtors traded in their 2004 Toyota for a 2004 Lexus in January 2008, resulting in a significant increase in the amount of their car payments.

WHEREFORE, the Acting United States Trustee respectfully requests entry of an order dismissing this case under section 707(b)(1) as an abuse of chapter 7 on grounds that the case is presumptively abusive under section 707(b)(2); or in the alternative, the totality of the circumstances of debtor's financial situation demonstrates abuse under section 707(b)(3)(B); and granting such further relief as the Court deems appropriate.

Dated: 2 December 2008                     Respectfully submitted,

                                            Sara L. Kistler, Acting United States Trustee

                                   By:     Minnie Loo
                                            Minnie Loo
                                            Attorney for the U.S. Trustee